IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID E. BURDETTE, | ) | 8:08CV536 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| FRED BRITTEN, warden, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Petitioner David E. Burdette's ("Burdette") Petition for Writ of Habeas Corpus ("Petition"). (Filing No. 1.) Respondent filed a Brief on the merits of the Petition (filing no. 8), State Court Records (filing no. 9), and a Reply Brief (filing no. 11). Burdette filed a Brief on the merits of the Petition. (Filing No. 10.) This matter is therefore deemed fully submitted.

## *I. BACKGROUND*

The pertinent factual background is set forth in *State v. Burdette*, 611 N.W.2d 615 (Neb. 2000), and the court summarizes it here. Burdette was convicted of two counts of first degree forcible sexual assault and one count of attempted first degree forcible sexual assault in 1982. These convictions resulted from the rapes and attempted rape of four separate women featured in a local magazine article regarding Omaha's "10 most eligible women." Burdette targeted these women based on the article, broke into their homes in the middle of the night, blindfolded them and bound their arms, raped them anally and vaginally, and stole money from their homes. *Id. at 621-22*. After pleading guilty, Burdette received consecutive sentences of 11 to 15 years' imprisonment for each of the sexual assaults and a concurrent sentence of 3 to 5 years' imprisonment for the attempted sexual assault. *Id. at 622*. Burdette served his sentences for the 1982 convictions, and was released on April 30, 1998. *Id.*

Approximately six months later, on October 14, 1998, an intruder broke into the rural Douglas County home of "A.B." and her two daughters. A.B.'s husband had recently died, and October 13 was the first night she and her daughters had stayed by themselves overnight in their home since his death. *Id.* The intruder blindfolded and gagged A.B., and tied her to her two daughters with plastic flexible cuffs. The intruder "digitally penetrated A.B. both anally and vaginally and fondled her breasts" and "penetrated her with his penis." *Id.* at 622-23. In addition to the sexual assault, the intruder stole money and a gun from A.B.'s home. *Id.* A neighbor of A.B.'s reported that she noticed a black Ford Bronco with a red stripe parked on the side of the road by A.B.'s home and got a partial license plate number of "1-H8 . . . [a]nd . . . possibly a seven." *Id.* at 623.

Several days later, a deputy sheriff saw a black Ford Bronco with a red stripe and a license plate number of 1-HH87. The deputy stopped the vehicle, driven by Burdette, who identified himself to the deputy as a registered sex offender. The deputy passed the information on to investigators in the sheriff's department. Burdette then became a suspect in the sexual assault of A.B. and investigators began a 24-hour surveillance on Burdette on October 22, 1998. The investigators obtained a court order from the Douglas County District Court on October 24, 1998 to install a global positioning tracking device on Burdette's vehicle. In order to gain access to Burdette's vehicle to install the tracking device, investigators put out a "locate" to have Burdette stopped in his vehicle and to have investigators notified when he was stopped. *Id.* at 623.

On October 27, 1998, pursuant to the "locate," the following occurred:

> [D]eputy sheriffs stopped Burdette in his vehicle and notified two of the investigators, Deputy Sheriff William Jackson and Deputy Sheriff John Pankonin. Although the stop was based on the locate, one of the deputy sheriffs told Burdette that the stop was for the purpose of having Burdette update his sex offender registration. Jackson and Pankonin

2

> proceeded to the area where Burdette had been stopped. Jackson requested that Burdette come to the sheriff's headquarters in order to update his sex offender registration. Burdette agreed to ride with the deputies to the headquarters. Burdette's vehicle was towed to the impound lot, where an electronic tracking device was installed on the vehicle.
>
> As the tracking device was being installed, Burdette was at the sheriff's headquarters completing the sex offender registration. Pankonin began Burdette's registration process with a blank form and went over the questions with Burdette. Pankonin asked Burdette only those questions that were on the registration form. Burdette answered the questions and volunteered additional information. Burdette told Pankonin about the sexual assaults he had committed in 1982. Burdette stated that in 1982, Burdette and his girl friend saw an issue of a local magazine featuring a list of the most eligible women in Omaha. Burdette told his girl friend the women on the list were probably better than the girl friend, and she replied that he would never know. Burdette told Pankonin that he took her reply as a challenge and that he proceeded to rape two or three of the women on the list.
>
> Burdette went on to tell Pankonin that in 1998, he was 43 years old, and that he was too old and not in good enough shape to do something like that again. However, Burdette told Pankonin that during the 1982 sexual assaults, he was not wearing a condom but that in 1998, he would wear a condom because of sexually transmitted diseases and because police would need only a small sperm sample to make a DNA identification. Burdette also told Pankonin that during the 1982 assaults, he did not use a weapon because he believed he could physically overpower the victims with his hands and did not need a weapon.

*Id.* at 623-24. After the tracking device was installed, investigators used it to track Burdette's movements. At the same time, investigators developed a theory that the intruder had found A.B.'s name by reading her husband's obituary in the Omaha World-Herald newspaper. For six weeks after installation of the tracking device, "investigators noticed Burdette would frequently drive slowly through and stop in

certain neighborhoods in the Omaha area." The investigators linked nine areas "to which Burdette paid particular attention to recent obituary notices in the Omaha World-Herald regarding men who had died and had been survived by their wives." *Id.* at 624.

On November 25, 1998, investigators noticed that Burdette targeted the home of "S.H." and discovered that S.H.'s husband's obituary had appeared in the previous day's Omaha World-Herald. After observing Burdette walking around S.H.'s home, investigators discussed the situation with S.H. and were given permission to wait inside her home. *Id.* Later that evening, Burdette entered S.H.'s home and was immediately confronted by investigators and placed under arrest. At the time he entered S.H.'s home, Burdette "was wearing latex rubber gloves and had rope and two condoms in his possession." *Id.*

On August 20, 1999, after a jury trial, Burdette was convicted of one count of First Degree Sexual Assault Second Offense, two counts of Burglary, one count of Robbery, and one count of Attempted First Degree Sexual Assault. (Filing No. 9-4, Attach. 3, at CM/ECF p. 1.) Burdette was sentenced to 35-60 years' imprisonment on the First Degree Sexual Assault Second Offense conviction, and 20-40 years' imprisonment on each of the remaining counts. (*Id.* at CM/ECF pp. 1-3.) Each sentence was "to be served separately and consecutive" to the others, for a total sentence of 115 to 220 years' imprisonment. (*Id.*)

Burdette filed a direct appeal, and his conviction and sentence were affirmed by the Nebraska Supreme Court on June 9, 2000. *Burdette*, 611 N.W.2d at 708. Burdette thereafter filed a verified motion for postconviction relief in the Douglas County, Nebraska District Court. (Filing No. 9-8, Attach. 7, at CM/ECF p. 25.) After extensive proceedings, including an evidentiary hearing and briefing, the Douglas County District Court denied post-conviction relief. (Filing No. 9-14, Attach. 13, at CM/ECF pp. 30-34.) Burdette appealed that order, and the Nebraska Court of

4

Appeals affirmed the denial of post-conviction relief in a detailed opinion on October 21, 2008. (Filing No. 9-17, Attach. 16, at CM/ECF pp. 1-9.) Burdette filed a petition for further review, which was denied by the Nebraska Supreme Court on December 10, 2008. (Filing No. 9-18, Attach. 17, at CM/ECF p. 2.)

On December 29, 2008, Burdette filed his Petition in this court. Condensed and summarized, Burdette seeks a writ of habeas corpus because:

> Claim One: Liberally construed as a due process claim, "[t]he Nebraska Supreme Court erred [in its ruling] on evidence of other crimes" *because* evidence of the 1982 sexual assaults was over 16 years old, highly prejudicial, and the prejudice substantially outweighed any probative value.
>
> Claim Two: Petitioner was denied the effective assistance of counsel *because* Petitioner's trial counsel (1) did not move to dismiss or quash the Information charging Petitioner with Attempted First Degree Sexual Assault,[1] which deprived Petitioner of his "constitutional right regarding fair notice, due process and the right to trial by jury"; (2) did not challenge law enforcement's use of the Global Positioning Tracker or the evidence and arrest obtained as a result of its use, which deprived Petitioner of "the guaranteed[d] right of due process; (3) did not object to inadmissible hearsay testimony, which deprived Petitioner of "his right to due process anf [sic] confortation [sic] of adverse witnesses"; (4) did not have the rape kit tested; and (5) did not "have DNA testing done on fluid samples gathered at the Backhuus residence tested with the Backhuus Family

---

[1]Petitioner argues that his trial counsel should have moved to dismiss or quash the Information because "there can be no inchoate offence [sic] of criminal att4mpt [sic] in regard to a substantive offense in which there is no element of intent." (Filing No. 1 at CM/ECF p. 6.)

5

|              | therefore depriving [Petitioner of] evidence relevant to critical issue of identity." |
|---|---|
| Claim Three: | Petitioner was denied the effective assistance of counsel *because* Petitioner's appellate counsel (1) did not challenge the Information charging Petitioner with Attempted First Degree Sexual Assault on direct appeal, which deprived Petitioner of his "constitutional right regarding fair notice, due process and the right to trial by jury"; (2) did not challenge law enforcement's use of the Global Positioning Tracker or the evidence and arrest obtained as a result of its use, which deprived Petitioner of "the guarantee[d] right of due process"; and (3) did not "challenge the sufficiency of the trial evidence" on direct appeal, which "denied [Petitioner] the due process guarantee of not being convicted of a crimr [sic] except upon proof of each materia [sic] element comprising the offencse(s) [sic]." |
| Claim Four: | Liberally construed as a due process claim, Petitioner was prejudiced by the admission of hearsay evidence *because* Deputy Randall Brunckhorst's testimony about the assailant's physical description caused unfair prejudice to Petitioner "due to the illusory weight and credibility laypersons lend to the testimony of law enforcement officers"; and Deputy John Pankonin's testimony that Petitioner stated "if he were to [commit a rape] today he would use a condom" was "especially damaging in light of the fact that condoms were found on [Petitioner's] person" at the time of his arrest. |

(Filing No. 6 at CM/ECF pp. 1-3.)

Where necessary, further facts are provided below. With that in mind, the court turns to the merits of Burdette's claims.

6

## *II. ANALYSIS*

Respondent argues that Burdette's claims are procedurally defaulted, and that even if the court determines that the claims are not procedurally defaulted, that each claim fails on the merits. (*See generally*, Filing No. 8.) Even when there is a procedural question presented, a court may alternatively reach the merits where the record is adequate to do so. *See*, *e.g.*, *Winfield v. Roper*, 460 F.3d 1026, 1038 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 2256 (2007) (holding that, where the record before the court presented adequate information upon which to base a decision on the merits of the petitioner's ineffective assistance of counsel claim, a court may alternatively consider the merits of the petitioner's claim rather than concentrating only on procedural questions); *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999) ("Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated.") (en banc). The court therefore declines to resolve the procedural default issues raised by Respondent and instead addresses the merits of Burdette's claims. For the reasons set forth below, each of Burdette's claims fails on the merits.

**A.     STANDARD OF REVIEW**

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

7

Further, section 2254(d)(1) states that a federal court may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 399. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). This high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

**B.    CLAIMS ONE AND FOUR**

For his Claims One and Four, Burdette argues that the Nebraska courts erred in their decisions regarding the admission of certain evidence. (Filing No. 1 at CM/ECF pp. 5-7.) Despite the fact that they appeared to raise issues of state law only, on initial review, the court liberally construed these claims as due process claims and permitted them to proceed to full briefing. (Filing No. 6.) Respondent argues that these claims are not federal claims, but are instead "errors of state law" which may not be challenged in this action. The court agrees.

As the Supreme Court has long-held, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v.*

*McGuire*, 502 U.S. 62, 68 (1991). In addition, although a habeas petitioner may characterize claims as due process violations, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Carson v. Director of the Iowa Dep't of Corr. Servs.*, 150 F.3d 973, 975 (8th Cir. 1998) (quotation omitted). A habeas petitioner must therefore "point to the Supreme Court precedent" that he believes the state court "acted contrary to or applied unreasonably." *Evenstad v. Carlson*, 470 F.3d 777, 783 (8th Cir. 2006) ("Evenstad's claims boil down to an issue of Minnesota state law and his attempt to recast the issue in a constitutional light is unavailing."). In particular, a federal court's habeas powers do not allow it "to reverse [a] conviction based on a belief that the trial judge incorrectly interpreted" a state's evidentiary rules in admitting "bad acts evidence." *Estelle*, 502 U.S. at 72.

Here, Burdette's Claim One states that "[t]he Nebraska Supreme Court Erred on evidence of other crimes involving 1982 sexual assaults." (Filing No. 1 at CM/ECF p. 5.) Burdette challenges the state court's admission of this evidence because it "is over 16 years old" and was prejudicial. (*Id.*) For his Claim Four, Burdette challenges the state court's admission of certain testimony by law enforcement officers because the testimony was prejudicial and was hearsay. (*Id.* at CM/ECF pp. 6-7.) At best, Burdette has attempted to "repackage" these state-law errors as due process violations. However, these claims are clearly challenges to state law and this court lacks the power to review them. To do so would require the court to interpret Nebraska's evidentiary rules and to second-guess the Nebraska courts' interpretation and application of those rules. Burdette does not point out any Supreme Court precedent which was unreasonably applied. In light of this, Claims One and Four are dismissed.[2]

---

[2]In a detailed opinion, the Nebraska Supreme Court rejected these claims on the merits. Thus, even though the court lacks the power to address these challenges to state-law determinations here, if it did so, this court would be required to afford substantial deference to the Nebraska state court decisions. Thus, the claims would

## C. CLAIMS TWO AND THREE

For his Claims Two and Three, Burdette argues that his trial and appellate counsel, Timothy Burns ("Burns"), was ineffective.[3] (Filing No. 6 at CM/ECF pp. 1-3.) A claim of ineffective assistance of counsel is reviewed under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

### 1. The *Strickland* Standard

In particular, *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687; *see also Bryson v. United States*, 268 F.3d 560 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991).

The first prong of the *Strickland* test requires the petitioner to demonstrate that his attorney failed to provide reasonably effective assistance. *Strickland*, 466 U.S. at 687-88. In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Hubbeling v. United States*, 288 F.3d 363, 365 (8th Cir. 2002). A court need not address the reasonableness of the

---

still fail on the merits because the Nebraska Supreme Court did not make a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

[3]Burdette had the same counsel at trial and on direct appeal. Claims Two and Three are nearly identical, except Claim Two deals with claims relating to trial and Claim Three deals with claims relating to his direct appeal. (Filing No. 6 at CM/ECF pp. 1-3.)

attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (quoting *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988)). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation are virtually unchallengeable" in a later habeas corpus action. 466 U.S. at 689.

Additionally, the Supreme Court has very recently emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1418-20 (2009) (reversing the Ninth Circuit Court of Appeals and holding that the decision of the California Court of Appeals, that the defendant was not deprived of effective assistance of counsel when his attorney recommended withdrawing his insanity defense during second phase of trial, was not contrary to or an unreasonable application of clearly established federal law; also concluding, among other things, that there was no reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different).

In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and that "leeway" presents a "substantially higher threshold" for a federal habeas petitioner to overcome. Thus:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro*, supra, at 473, 127 S. Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

11

*Id.* at 1420.

### 2. Burdette's Claims

The Douglas County District Court held an evidentiary hearing regarding Burdette's ineffective assistance of counsel claims. (Filing No. 9-14, Attach. 13, at CM/ECF p. 30.) After considering all of the evidence, the Douglas County District Court determined that Burns was not ineffective, specifically finding that:

> [T]hese are tactical or trial strategy decisions and they are hereby overruled as the Defendant is bound by the tactical or strategic decisions made by his own counsel. . . . Even if these trial or tactical decisions can be considered, based upon the evidence, the Court does not find that the Defendant's counsel performance [was] deficient.

(*Id.* at CM/ECF pp. 32-33.) Regarding prejudice as a result of the alleged ineffective assistance of counsel, the Douglas County District Court found "that there was none." (*Id.* at CM/ECF p. 33.)

The Nebraska Court of Appeals also considered Burdette's ineffective assistance of counsel arguments and found them without merit. In applying *Strickland*, the Nebraska Court of Appeals agreed with the Douglas County District Court and found that "Burdette did not receive ineffective assistance of counsel . . . . (Filing No. 9-17, Attach. 16, at CM/ECF pp. 4, 6.) The Nebraska Court of Appeals addressed each of Burdette's claims in detail. Regarding Burdette's claims regarding the global positioning tracking device, the Nebraska Court of Appeals determined that Burns researched the law regarding the placement of tracking devices and discovered *United States v. Knotts*, 460 U.S. 276 (1983). (*Id.* at CM/ECF p. 6.) Thus, the Nebraska Court of Appeals found that:

> Burns stated that he did consider contesting the affidavit supporting the court's order permitting law enforcement to place a tracking device on Burdette's vehicle. However, his research revealed *Knotts* through which he determined a person has no reasonable expectation of privacy when driving in public, therefore a Fourth Amendment challenge would not be successful. . . . In light of the case law and Burns' testimony, we find that Burns' performance was not deficient and could not have prejudiced Burdette because Burdette had no constitutional expectation of privacy while driving his vehicle in public pursuant to *Knotts*. Because it is impossible for counsel to be ineffective for failing to assert a right that does not exist, we find that the trial court was correct in its decision with respect to this issue.

(*Id.* at CM/ECF pp. 6-7.)

Regarding the claim that Burns was ineffective for failing to challenge the testimony of adverse witnesses, the Nebraska Court of Appeals found:

> Additionally, Burns' failure to object to Deputy Brunckhorst's testimony regarding A.B.'s daughters' inconsistent statements was trial strategy as the statements tended to call into question the veracity of A.B.'s testimony regarding the same facts. As such, the statements were not prejudicial to Burdette and Burns' failure to object to the statements was not a deficient performance. For these reasons we find that Burns' performance was not deficient and did not prejudice Burdette by failing to object to Deputy Brunckhorst's statements at trial.

(*Id.* at CM/ECF p. 7.) As for the specific claim relating to "hearsay testimony," the Nebraska Court of Appeals determined that Burdette's own statements were not hearsay under Nebraska law, and therefore "Burns' failure to object was not a deficiency in performance and did not prejudice Burdette." (*Id.* at CM/ECF p. 8.)

Burdette's claims relating to DNA testing on the rape kit and other fluids, the Nebraska Court of Appeals determined that:

13

> In the postconviction proceeding, Burns testified that, based on the facts of this case, he did not believe that an argument could be made that the perpetrator of A.B.'s assault had been female. The trial court concluded that this decision was part of Burns' trial strategy, was not a deficient performance, and did not prejudice Burdette. We agree.

(*Id.* at CM/ECF p. 9.) The Nebraska Court of Appeals also found Burdette's claims regarding Burns' failure to file a motion to dismiss or quash unavailing because, under Nebraska law, "a person can intentionally attempt an act that does not require criminal intent to complete." (*Id.*) As with some of Burdette's other claims, the Nebraska Court of Appeals stated that the claim failed because "counsel cannot be ineffective for failing to raise a claim that has no merit." (*Id.*)

Burdette's only other claim, the failure to raise "sufficiency of evidence" issues on appeal, was also rejected. The Nebraska Court of Appeals determined:

> The record is replete with circumstantial evidence that Burdette committed the crimes. Among the most incriminating of this evidence, a witness testified that a vehicle matching Burdette's, including a similar license plate number, was present on A.B.'s street the night of the assault. There was also evidence of the surveillance conducted on Burdette wherein he was observed slowly driving by S.H.'s home on several occasions and on two occasions leaving his vehicle and traveling on foot near and around her house. A deputy testified that he was stationed inside S.H.'s home when Burette broke in and that the deputy subsequently took Burdette into custody. At the time of his arrest, Burdette was wearing latex gloves and had several incriminating items in his possession including condoms, rope, and a screwdriver. In light of this and other evidence which, when viewed in the light most favorable to the prosecution, the trier of fact could have found, beyond a reasonable doubt, the essential elements of the crimes with which Burdette was charged. As such, we find that the trial court properly concluded that Burdette did not receive ineffective assistance of counsel, because Burns failed to challenge the sufficiency of the evidence to sustain the convictions.

(*Id.* at CM/ECF p. 8.) In summary, the Nebraska Court of Appeals applied *Strickland*, and issued a detailed opinion rejecting every one of Burdette's ineffective assistance of counsel claims.

Respondent argues that the foregoing findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Indeed, as set forth above, the court must grant substantial deference to the Nebraska state court decisions. The court has carefully reviewed the record in this matter and finds that the Nebraska state court decisions are not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Burdette has not submitted any evidence, let alone clear and convincing evidence, that the Douglas County District Court or the Nebraska Court of Appeals was incorrect in any of its factual determinations. 28 U.S.C. § 2254(e)(1). The grant of a writ of habeas corpus is not warranted here because the Nebraska state courts correctly applied *Strickland* and other Supreme Court holdings. In light of these findings, Burdette's Claims Two and Three are also dismissed.

IT IS THEREFORE ORDERED that:

1. Petitioner's Petition for Writ of Habeas Corpus (filing no. 1) is dismissed with prejudice.

2. A separate judgment will be entered in accordance with this Memorandum and Order.

July 8, 2009.  BY THE COURT:

*s/Richard G. Kopf*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.